STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 1334

CHARLES BURNS

VERSUS

BATON ROUGE GENERAL MEDICAL CENTER, ET AL

Judgment Rendered: **JUL 1 2 2024**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 654,768; Sec. 24

Honorable Donald R. Johnson, Judge Presiding

* * * * * * *

John N. Samaha                          Attorney for Plaintiff/Appellant
Baton Rouge, Louisiana                  Charles Burns


Michael M. Remson                       Attorneys for Defendant/Appellee
Craig J. Sabottke                       Baton Rouge General Medical Center
Courtenay S. Herndon
Baton Rouge, Louisiana


* * * * * * *

BEFORE: **THERIOT, PENZATO, AND GREENE, JJ.**

**PENZATO, J.**

Plaintiff, Charles Burns, appeals a summary judgment dismissing his medical malpractice action against Baton Rouge General Medical Center. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Enorris Jones, the father of Charles Burns, was admitted to Baton Rouge General on June 18, 2014, and underwent oral and maxillofacial surgery for repair of a fractured jaw the following day. Walter J. Jung, IV, D.D.S., performed the surgery. Present for the surgery were anesthesiologist Salim Sukkar, M.D., and certified registered nurse anesthetist (CRNA) Nicole Holmes, both employees of Parish Anesthesia of Baton Rouge, LLC. While in the recovery room following surgery, Mr. Jones began bleeding from his mouth and nose. Mr. Jones inhaled blood into his lungs, which progressed to respiratory failure. He was ultimately intubated, but not before losing a pulse for approximately four minutes. On July 1, 2014, Mr. Jones died as a result of these events; his cause of death was anoxic brain injury due to oral bleeding into the lungs.

A medical review panel unanimously found no deviation from the appropriate standard of medical care. The panel opinion stated:

> It is the opinion of this medical review panel that there was no deviation from the appropriate standard of medical care by Walter Jung, IV D.D.S., Parish Anesthesia of Baton Rouge, Nicole Holmes CRNA, Dr. Salim Sukkar and Baton Rouge General Hospital. Dr. Jung followed appropriate parameters in performing surgery the next day. Dr. Jung issued proper orders and issued orders for wire cutters to be at the patient's bedside. Dr. Sukkar, the supervising anesthesiologist, was present at intubation and he remained immediately available for all pertinent parts of the anesthesia course. Dr. Sukkar was contacted by phone and issued appropriate orders until he could get to the hospital, arriving in a timely fashion. Nicole Holmes CRNA was readily available and responded in a timely fashion. She was in the recovery room when the patient encountered problems and responded quickly administering proper medications. She was also immediately available and assisting with the patient when the patient coded. Parish Anesthesia of Baton Rouge and Baton Rouge General Hospital had appropriate personnel pre-operatively, intra-operatively and post-

2

operatively who properly cared for the patient. The medical providers were faced with a difficult situation and followed proper procedures in handling the patient.

Mr. Burns thereafter filed a petition for damages, naming as defendants Baton Rouge General, Parish Anesthesia of Baton Rouge, Dr. Sukkar, Ms. Holmes, and Dr. Jung.[1] Relevant hereto, Mr. Burns alleged the nursing staff of Baton Rouge General failed to:

adequately, competently, and timely monitor and provide care and support to Mr. Jones, who obviously was in need of their timely assistance, including, but not limited to, the failure to provide adequate equipment at the ready, in case of an emergency, which critically delayed the endotracheal intubation, and eventually his survival.

Mr. Burns further alleged that the Baton Rouge General nurses deviated below the standard of care expected of the nursing profession, and their actions caused Mr. Jones to inhale blood into his lungs, ultimately leading to his death.

Baton Rouge General filed a motion for summary judgment on January 18, 2023, asserting Mr. Burns had not provided any qualified physician testimony that opined that the Baton Rouge General nursing staff breached the standard of care or that any breach in the standard of care caused any damages to Mr. Jones that he would not have otherwise suffered.[2] In opposition, Mr. Burns relied upon the Baton Rouge General hospital records and the coroner's report, which identified the cause of death as anoxic brain injury due to oral bleeding in the lungs. He further relied upon the affidavit of Beryl Jacques, a registered nurse. In her affidavit, Ms. Jacques opined that the Baton Rouge General nurses caring for Mr. Jones breached the

---

[1] Mr. Burns' action against Dr. Jung was dismissed, without prejudice, by an order signed October 18, 2017. Dr. Sukkar and Ms. Holmes were dismissed as defendants, without prejudice, by an order signed April 12, 2023. Parish Anesthesia of Baton Rouge, Dr. Sukkar, and Ms. Holmes were dismissed with prejudice by an order signed May 23, 2023. The claims against these defendants are not before us in the present appeal.

[2] Baton Rouge General previously filed a motion for summary judgment on April 18, 2018. This motion for summary judgment was denied by judgment signed August 20, 2021. Baton Rouge General filed a second motion for summary judgment on October 14, 2021. The record does not reflect that this motion was heard or that a judgment was rendered in connection therewith.

standard of care, and their breach was a substantial factor in Mr. Jones's injuries that led to his death.

Following a hearing, the trial court issued written reasons and signed a judgment on May 3, 2023, granting the motion for summary judgment filed by Baton Rouge General and dismissing Baton Rouge General from the matter, with prejudice, finding that Mr. Burns failed to show he would be able to meet his burden of proof at trial through expert testimony. Mr. Burns filed a motion for new trial, which was denied. He now appeals, contending the trial court erred in granting summary judgment in favor of Baton Rouge General. Specifically, Mr. Jones argues the trial court erred in its finding that the supporting documents attached to his opposition to the motion for summary judgment did not establish causation in Mr. Jones's death.

## LAW AND DISCUSSION

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action.[3] La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). At the time of the hearing on the motions for summary judgment, La. C.C.P. art. 966(A)(4) provided that the mover can meet its burden by filing supporting documentary evidence consisting of pleadings,

---

[3] Louisiana Code of Civil Procedure article 966 was amended by La. Acts 2023, No. 317, § 1 and La. Acts 2023, No. 368, § 1, effective August 1, 2023. Despite the declaration in the revision comments that the amendment "is not intended to make substantive changes to the law," see La. C.C.P. art. 966, Comments – 2023, Comment (f), this court has determined that the amendments are substantive and cannot be applied retroactively. See Ricketson v. McKenzie, 2023-0314 (La. App. 1 Cir. 10/4/23), 380 So. 3d 1, 6. Accordingly, in the instant matter, we apply the version of La. C.C.P. art. 966 in effect at the time the motions for summary judgment were submitted and heard, and judgment was rendered.

4

memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. The mover's supporting documents must prove the essential facts necessary to carry the mover's burden. See La. C.C.P. art. 966(A)(3); *Ricketson v. McKenzie*, 2023-0314 (La. App. 1 Cir. 10/4/23), 380 So. 3d 1, 6-7.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if he will not bear the burden of proof at trial. La. C.C.P. art. 966(D)(1). Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its motion, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*; see also La. C.C.P. art. 966, Comments – 2015, Comment (j). If the non-moving party fails to produce factual support in opposition sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, La. C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. *White v. Herbert*, 2022-1333 (La. App. 1 Cir. 6/2/23), 369 So. 3d 898, 902. However, even in the absence of formal opposition, the moving party must show that he is entitled to summary judgment. *Ricketson*, 380 So. 3d at 7.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case.

*Succession of Hickman v. State Through Board of Supervisors of Louisiana State University Agricultural and Mechanical College*, 2016-1069 (La. App. 1 Cir. 4/12/17), 217 So. 3d 1240, 1244.

The motion for summary judgment at issue herein arises in the context of a suit for medical malpractice. To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794; *Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So. 3d 1002, 1006. Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Id.* at 1006-07. Except for cases where the causal connection between a defendant's fault and the injury alleged is obvious, expert medical testimony is also necessary to establish causation. *Jackson v. Suazo-Vasquez*, 2012-1377 (La. App. 1 Cir. 4/26/13), 116 So. 3d 773, 776. Normally, in cases involving patients with complicated medical histories and complex medical conditions, causation is simply beyond the province of lay persons to assess. *Id.*

In support of its motion for summary judgment, Baton Rouge General filed the affidavit of the chairperson for the medical review panel, to which was attached a certified copy of the unanimous opinion of the panel concluding Baton Rouge General had not deviated from the appropriate standard of medical care. Baton Rouge General also filed the deposition of anesthesiologist Kent Diveley, M.D., taken on September 14, 2022. In his deposition, Dr. Diveley testified he did not have an opinion as to the care provided by the Baton Rouge General nursing staff and could not say the nursing staff caused any damages to Mr. Jones. This evidence pointed out the absence of a causal connection between the conduct of the Baton

Rouge General nursing staff and the damages to Mr. Jones. Therefore, in order to avoid summary judgment in favor of Baton Rouge General, the burden shifted to Mr. Burns to provide expert evidence establishing he would be able to sustain his evidentiary burden at trial of proving, not only that the Baton Rouge General nursing staff breached the applicable standard of care, but also that the alleged breaches caused Mr. Jones's death. La. C.C.P. art. 966(D)(1); see Jackson, 116 So. 3d at 776-77.

In response, Mr. Burns filed an opposition to the motion for summary judgment, attaching as exhibits the certified records of Baton Rouge General, Mr. Jones's death certificate, the coroner's report, the affidavit of Ms. Jacques, and a December 4, 2021 affidavit of Dr. Diveley.

The records from Baton Rouge General contained the discharge summary of Stephen P. Brierre, M.D. Dr. Brierre noted that "it was very likely that [Mr. Jones] had severe anoxic brain injury with very little chance for neurologic recovery." The death certificate established the immediate cause of Mr. Jones's death as anoxic brain injury caused by oral bleeding into the lungs. Similarly, the coroner's report contained findings of surgical fixation of mandible "complicated by aspiration of blood, hypoxia, and cardiac arrest secondary to anoxic brain injury." Mr. Burns correctly notes that these records establish that the cause of Mr. Jones's death was anoxic brain injury due to oral bleeding in the lungs. However, nothing in these records satisfies Mr. Burns' burden of proving a causal connection between any actions or inactions by the Baton Rouge General nursing staff and Mr. Jones's death.

In his December 4, 2021 affidavit, Dr. Diveley opined that the failure of the anesthesia team and nurses, including the nursing staff of Baton Rouge General, to appreciate Mr. Jones's respiratory compromise was a significant factor or proximately caused Mr. Jones's post-surgery injuries and death. However, in his subsequent deposition, Dr. Diveley acknowledged that he did not have any specific

7

criticisms of the care provided by the Baton Rouge General nursing staff, and further testified that he did not have any opinions that the Baton Rouge General nursing staff caused any damages to Mr. Jones.

In her June 22, 2021 affidavit, Ms. Jacques attested that she was a registered nurse in Louisiana. According to Ms. Jacques, the Baton Rouge General nursing staff breached the standard of care in the following ways:

(1) failing to timely call for the services of an anesthesiologist, or a rapid response team, when Mr. Jones showed signs of respiratory distress;

(2) administering Dilaudid and not objecting to the use of Versed in the face of respiratory distress, and failing to administer drugs to reverse any drugs contra-indicated for respiratory distress; and

(3) failing to cut the wires to the jaw sooner, and otherwise suction the obstruction in Mr. Jones's throat or airway.

Ms. Jacques concluded that, based upon her nursing education, training, and experience, and based upon well-established nursing principles, the Baton Rouge General nurses providing care to Mr. Jones violated the standard of care expected of a registered nurse in his care and treatment. Ms. Jacques further attested it was her opinion that the deviation by the Baton Rouge General nursing staff "was a substantial factor in Mr. Jones'[s] injuries, that led to his death."

The issue in this case is whether there was a causal connection between the conduct of the Baton Rouge General nursing staff and Mr. Jones's injuries and resulting death. We find this is not a nursing issue, but is inextricably bound to the medical determination that Mr. Jones's post-surgical recovery was complicated by his aspiration of blood, hypoxia, and cardiac arrest secondary to anoxic brain injury. We find this medical determination is beyond the expertise of Ms. Jacques, a registered nurse. See Jackson, 116 So. 3d at 778. As noted by the medical review panel, the medical providers in this case were faced with a difficult situation. Based

8

on our review of the record, we find Mr. Burns failed to prove that he will be able to satisfy his evidentiary burden of proof at trial against Baton Rouge General concerning the causation of damages, and therefore Baton Rouge General is entitled to summary judgment.

## CONCLUSION

For the above and foregoing reasons, the May 3, 2023 judgment granting summary judgment in favor of Baton Rouge General Medical Center and dismissing Baton Rouge General Medical Center from this matter with prejudice is affirmed. All costs of this appeal are assessed to Charles Burns.

**AFFIRMED.**